JUSTICE NELSON
concurs.
¶24 I have signed our Opinion because we have correctly applied *19 existing legal theory and constitutional jurisprudence to resolve this case on its facts.
¶25 I feel the pain of conflict, however. I fear that, eventually, we are all going to become collateral damage in the war on drugs, or terrorism, or whatever war is in vogue at the moment. I retain an abiding concern that our Declaration of Rights not be killed by friendly fire. And, in this day and age, the courts are the last, if not only, bulwark to prevent that from happening.
¶26 In truth, though, we are a throw-away society. My garbage can contains the remains of what I eat and drink. It may contain discarded credit card receipts along with yesterday’s newspaper and junk mail. It might hold some personal letters, bills, receipts, vouchers, medical records, photographs and stuff that is imprinted with the multitude of assigned numbers that allow me access to the global economy and vice versa.
¶27 My garbage can contains my DNA.
¶28 As our Opinion states, what we voluntarily throw away, what we discard-i.e., what we abandon-is fair game for roving animals, scavengers, busybodies, crooks and for those seeking evidence of criminal enterprise.
¶29 Yet, as I expect with most people, when I take the day’s trash (neatly packaged in opaque plastic bags) to the garbage can each night, I give little consideration to what I am throwing away and less thought, still, to what might become of my refuse. I don’t necessarily envision that someone or something is going to paw through it looking for a morsel of food, a discarded treasure, a stealable part of my identity or a piece of evidence. But, I’ve seen that happen enough times to understand-fhough not graciously accept-that there is nothing sacred in whatever privacy interest I think I have retained in my trash once it leaves my control-the Fourth Amendment and Article II, Sections 10 and 11, notwithstanding.
¶30 Like it or not, I live in a society that accepts virtual strip searches at airports; surveillance cameras; “discount” cards that record my buying habits; bar codes; “cookies” and spywear on my computer; online access to satellite technology that can image my back yard; and microchip radio frequency identification devices already implanted in the family dog and soon to be integrated into my groceries, my credit cards, my cash and my new underwear.
¶31 I know that the notes from the visit to my doctor’s office may be transcribed in some overseas country under an out-sourcing contract by a person who couldn’t care less about my privacy. I know that there are all sorts of businesses that have records of what medications I take *20 and why. I know that information taken from my blood sample may wind up in databases and be put to uses that the boilerplate on the sheaf of papers I sign to get medical treatment doesn’t even begin to disclose. I know that my insurance companies and employer know more about me than does my mother. I know that many aspects of my life are available on the Internet. Even a black box in my car-or event data recorder as they are called-is ready and willing to spill the beans on my driving habits, if I have an event-and I really trusted that car, too.
¶32 And, I also know that my most unwelcome and paternalistic relative, Uncle Sam, is with me from womb to tomb. Fueled by the paranoia of ‘ists” and ‘Isms,” Sam has the capability of spying on everything and everybody-and no doubt is. But, as Sam says: ‘It’s for my own good.”
¶33 In short, I know that my personal information is recorded in databases, servers, hard drives and file cabinets all over the world. I know that these portals to the most intimate details of my life are restricted only by the degree of sophistication and goodwill or malevolence of the person, institution, corporation or government that wants access to my data.
¶34 I also know that much of my life can be reconstructed from the contents of my garbage can.
¶35 I don’t like living in Orwell’s 1984; but I do. And, absent the next extinction event or civil libertarians taking charge of the government (the former being more likely than the latter), the best we can do is try to keep Sam and the sub-Sams on a short leash.
¶36 As our Opinion states, search and seizure jurisprudence is centered around privacy expectations and reasonableness considerations. That is true even under the extended protections afforded by Montana’s Constitution, Article II, Sections 10 and 11. We have ruled within those parameters. And, as is often the case, we have had to draw a fine line in a gray area. Justice Cotter and those who have signed the Opinion worked hard at defining that line; and I am satisfied we’ve drawn it correctly on the facts of this case and under the conventional law of abandonment.
¶37 That said, if this Opinion is used to justify a sweep of the trash cans of a neighborhood or community; or if a trash dive for Sudafed boxes and matchbooks results in DNA or fingerprints being added to a forensic database or results in personal or business records, credit card receipts, personal correspondence or other property being archived for some future use unrelated to the case at hand, then, absent a search warrant, I may well reconsider my legal position and *21 approach to these sorts of cases-even if I have to think outside the garbage can to get there.
¶38 I concur.